IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DESTINY NELSON,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF PHILADELPHIA,<br><br>    Defendant. | Civil Action No. 2:24-cv-4821-GAW |

## MEMORANDUM OPINION

### I.    Introduction

Before this Court is a motion to dismiss (the "Motion" at Dkt. #7) filed by Defendant City of Philadelphia (the "Defendant"). Plaintiff Destiny Nelson ("Plaintiff") opposed. Because this Court concludes that Plaintiff's Complaint (the "Complaint" at Dkt. #1) fails to sufficiently allege *respondeat superior* liability for sexual harassment, fails to allege a disability under the Americans with Disabilities Act (the "ADA"), and fails to allege facts from which this Court can infer that Plaintiff reasonably believed she engaged in protected ADA conduct for which retaliation might be actionable, the Motion is granted as to those claims. But as the Complaint just barely alleges enough facts from which this Court can infer that her suspension and termination were based upon retaliation for protected Title VII conduct, Plaintiff's claim for sexual harassment retaliation survives. In light of the Third Circuit's policy on granting leave to amend liberally, dismissal is without prejudice, and Plaintiff will have 14 days to replead her dismissed claims.

### II.    Factual Allegations

The Complaint alleges that Plaintiff was an officer, employed by Defendant's

1

Department of Corrections, was qualified for her position, and performed well. (Dkt. #1 at ¶¶ 22-24). Plaintiff alleges that another officer, Officer Clay, repeatedly asked for her phone number, said he wanted to "link up with her outside of work," and "wanted her to come to his house. . . ." (*Id.* at ¶¶ 26-27). Plaintiff alleges that Officer Clay was "in a high-ranked position at Defendant" but makes no allegations that Officer Clay was Plaintiff's supervisor. (*Id.* at ¶ 30). There are similarly no allegations that Officer Clay set Plaintiff's schedule, told Plaintiff how to perform her job, disciplined her for job performance, signed off on Plaintiff's pay, or performed any supervisory duties with respect to Plaintiff. Plaintiff alleges that Officer Clay and another officer, Officer Lattamore, spread false rumors about Plaintiff in retribution for Plaintiff rejecting Officer Clay's advances, which resulted in Plaintiff feeling humiliated and disrespected. (*Id.* at ¶¶ 29-32).

Plaintiff next describes an incident in February 2023 in which an inmate who was smoking an unknown substance allegedly blew smoke into Plaintiff's face. (*Id.* at ¶ 33). As a result, Plaintiff suffered "a panic attack, anxiety, paranoia, and nausea." (*Id.* at ¶ 34). Plaintiff summarily alleges that these conditions interfered with major life activities, such as performing her responsibilities at work. (*Id.* at ¶ 35). Plaintiff alleges she was denied the reasonable accommodation of being permitted to go to the hospital. (*Id.* at ¶ 36). Plaintiff does not allege that she had any ongoing symptoms beyond those suffered in the panic attack which happened in the immediate aftermath of the smoke incident. Plaintiff does not allege that there was another accommodation which was requested and denied, or that she needs an accommodation going forward. Further, while the timeline in the Complaint is unclear, the Complaint alleges that Plaintiff *did* go to the hospital for treatment, after all. (*Id.* at ¶ 38).

In May 2023, Plaintiff alleges that she reported Officer Clay's misconduct to Warden

Angelucci ("Angelucci") and also complained about the way the situation with the smoke was handled four months earlier. (*Id.* at ¶¶ 42-43). Plaintiff alleges that Angelucci "did not take Plaintiff's complaints seriously and refused to allow Plaintiff to explain her situation." (*Id.* at ¶ 44). But Plaintiff does not allege any continuing harassing behavior after her meeting with Angelucci.

On June 8, 2023, Plaintiff alleges she was suspended for twenty days. (*Id.* at ¶ 45). Plaintiff called Angelucci to inquire as to her suspension, and was allegedly told by Angelucci that he did not know why she was suspended. (*Id.* at ¶¶ 48-50). Plaintiff allegedly did not have a write-up to explain her suspension. (*Id.* at ¶ 52). When Plaintiff sought help from Michael Tate, her union representative, he allegedly said he would help her but only if she "cooked him dinner," a comment Plaintiff describes as a sexual advance. (*Id.* at ¶¶ 54-55). Plaintiff's union representatives allegedly also did not have information as to why she was suspended and did not have a write-up regarding her. (*Id.* at ¶ 57).

On June 16, 2023, Plaintiff had a preliminary hearing at which she was told she was written up for allegedly bringing contraband to two inmates. (*Id.* at ¶¶ 60-62). Plaintiff alleges that this write-up "contained information" that was false. (*Id.* at ¶ 63). Plaintiff goes on to discuss discrepancies between alleged falsehoods in the write-up with respect to the length of a video she was shown and raises questions about the punishments received by the two inmates who Plaintiff was accused of supplying. (*Id.* at ¶ 65-65, 70-73). The Complaint also refers to "the false write-up, accusations, and suspension. . ." (*Id.* at ¶ 67). Curiously, the Complaint seems to take painstaking lengths to careful avoid actually saying *what* was false about the discipline.[1] And

---

[1]   Because of Plaintiff's use of the Oxford comma and because there is no dispute that the suspension occurred (and therefore is not "false"), the word "false" in Paragraph 67 can only be read as modifying solely the "write-up," not the "accusations." But this Court, making inferences in Plaintiff's favor, will assume that this sloppy language and punctuation was intended to plead

3

there is no allegation in the Complaint which squarely and explicitly denies the main thrust of the accusations brought against her at this hearing: that she provided contraband. But ultimately, as will be explained *infra*, this gap (intentional or otherwise) in the pleadings does not weigh on the Court's decision today.

On July 13, 2023, Plaintiff's employment was terminated. (*Id.* at ¶ 68). Plaintiff pleads, without additional factual support, that the stated reason (providing contraband) was pretextual. (*Id.* at ¶ 69). As support for that contention, Plaintiff once again mentions that she was punished for alleged misconduct, but the inmates were not. (*Id.* at ¶ 74). But Plaintiff also conflictingly pleads that the inmates served 15 to 20 days in the "hold rooms." (*Id.* at ¶ 71). These allegations, too, conspicuously lack a direct statement that Plaintiff did not provide contraband to inmates.

On September 11, 2024, Plaintiff brought suit in this case. She brings claims of Hostile Work Environment based on sex (Counts I-III), Disability Discrimination by way of termination (Counts IV-VI) and Retaliation for making complaints about sexual harassment and/or failure to accommodate a disability (Counts VII-X). The claims are brought under Title VII, the ADA, the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO").

### III.  Legal Standards

Federal Rule of Civil Procedure 12(b)(6) requires this Court to dismiss a count of a complaint if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation marks and citation omitted). The court must "construe the complaint in the light most

---

that the content of the write-up was false and that the accusations themselves were false. But even with that assumption, there is nothing in the Complaint that explains which portions of the information underlying the discipline was false.

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court cannot draw any *unreasonable* or unsupported inferences. *See, e.g.*: *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.,* 450 F.3d 130, 133 (3d Cir. 2006) ("[W]e need not credit the non-movant's conclusions of law or unreasonable factual inferences."); *Little v. Chambersburg Hosp.*, No. 1:11-CV-01804, 2012 WL 1048820, at *4 (M.D. Pa. Mar. 28, 2012) ("The deferential standard of review applicable to a motion to dismiss does not go so far as to require this Court to accept unsupported inferences drawn by the Plaintiff."). A formulaic recitation of the elements of a claim will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotation marks and citation omitted). Conclusory statements and unfounded speculation are insufficient to state a claim. *Parker v. Pennstar Bank, NBT,* 436 F. App'x 124, 127 (3d Cir. 2011).

The Parties seem to agree- as does this Court- that the elements of the four buckets of claims are basically the same across the federal, state, and local statutes involved. To state a claim for a hostile work environment based upon sex, a Plaintiff must allege facts to support the following elements: (1) intentional discrimination because of her sex; (2) severe or pervasive discrimination; (3) a detrimental effect; (4) that the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) *respondeat superior* liability. *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017). "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim. . . ." *Vance v. Ball State Univ.,* 570 U.S. 421,

5

424 (2013). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must demonstrate: (1) that she is a disabled person within the meaning of the ADA; (2) that she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that she has suffered an otherwise adverse employment decision as a result of discrimination. *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998). "A person qualifies as 'disabled' under the ADA if [s]he: (1) has a physical or mental impairment that substantially limits one or more of h[er] major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Keyes v. Catholic Charities of the Archdiocese of Phila.*, 415 Fed. Appx. 405, 409 (3d Cir. 2011). "[A] temporary, non-chronic impairment of short duration is not a disability covered by the ADA." *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 736 (E.D. Pa. 2019) (Kenney, J.), *aff'd*, 824 F. App'x 100 (3d Cir. 2020); *see also*: *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002); *El v. People's Emergency Ctr.*, 315 F. Supp. 3d 837, 844 n.53 (E.D. Pa. 2018) (Rufe, J.) (granting motion to dismiss ADA claim); *Sampson v. Methacton Sch. Dist.*, 88 F. Supp. 3d 422, 438 (E.D. Pa. 2015) (Surrick, J.); *Hobson v. St. Luke's Hosp. & Health Network,* 735 F. Supp. 2d 206, 218 (E.D. Pa. 2010) (granting motion to dismiss ADA claim).

A claim for retaliation under Title VII and the similar state and local statutes must allege "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation

in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995) (internal citation omitted). "[T]o demonstrate a causal connection, a plaintiff generally must show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism, coupled with timing, to establish a causal link." *Budhun v. Reading Hosp. & Med. Ctr.,* 765 F.3d 245, 258 (3d Cir. 2014) (internal citation omitted). When an employee opposes their employer's activity, that employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII. *Moore v. City of Philadelphia,* 461 F.3d 331, 341 (3d Cir. 2006), *as amended* (Sept. 13, 2006) (citing *Clark County School Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (holding no reasonable person could have believed a single incident of one off-colored statement violated Title VII).

"To establish a *prima facie* case of illegal retaliation under the ADA, a plaintiff must prove: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 567–68 (3d Cir. 2002) (internal quotation marks and citations omitted). A request for an accommodation for a temporary injury does not state a claim for protected conduct. *See, e.g.*: *Isley v. Aker Philadelphia Shipyard, Inc.*, 191 F. Supp. 3d 466, 470 (E.D. Pa. 2016) (McHugh, J.) (*citing Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010)).

**IV.** **Analysis**

A. **Sexual Harassment Claims**

Plaintiff's sexual harassment claims fail for two reasons. First, the Complaint does not allege facts which implicate *respondeat superior* liability. Second, that the conduct alleged itself

is not sufficiently severe or pervasive. The Court will address them in turn.

As to *respondeat superior* liability, Plaintiff merely alleges that Officer Clay was in a "highly-ranked position. . . ." (Dkt. #1 at ¶ 30). At no point does Plaintiff allege that Officer Clay was her supervisor. Nor does the Plaintiff allege that Officer Clay was empowered to take tangible employment action against her or alleged any facts which would permit that inference. *See Vance,* 570 U.S. at 424. For that reason, Officer Clay's conduct cannot, itself, be imputed to Defendant. The same analysis applies to the singular inappropriate comment allegedly made by Michael Tate, Plaintiff's union representative.

In order to prevail, therefore, Plaintiff must be able to point to her meeting with Angelucci (the only supervisor plead in the Complaint) and achieve *respondeat superior* liability through him. Plaintiff alleges that she met with Angelucci and brought Officer Clay's conduct to his attention. (Dkt. #1 at ¶ 42). Plaintiff stated her subjective belief is that the Angelucci did not take Plaintiff's complaints seriously and did not allow Plaintiff to fully explain the situation. (*Id.* at ¶ 44). But in order to impute liability upon Defendant based on Angelucci's conduct, Plaintiff had to do more than state a subjective belief that he failed to take her seriously.

Instead, Plaintiff needed to allege that she complained to him and the hostile work environment persisted. The Complaint is devoid of any allegations that further sexual harassment occurred *after* meeting with Angelucci. As to Mr. Tate's comments, there is no allegation that she reported it to anyone in a leadership role with Defendant, and, absent this reporting, any claim related to that comment must fail. For these reasons, the sexual harassment claims are dismissed.

Even if *respondeat superior* liability was established, this Court also notes that the conduct alleged falls below what is required to plead a severe or pervasive atmosphere of

harassment. Officer Clay's alleged repeated requests for a date are likely not the sort of shocking harassment which would be actionable as words only, even without the *respondeat superior* problem. The rumors that were allegedly spread about her related to accusations of illegal activities, unrelated to her sex. Even if Officer Clay's motivation to spread them were based on his own, personal, sex-based animus toward Plaintiff, the City cannot be placed on the Title VII hook for not stopping rumors it had no way of knowing bore any connection at all to Plaintiff's protected class. Finally, Michael Tate's one alleged comment, conditioning assistance on Plaintiff cooking him dinner, was obviously starkly inappropriate. But again, as a one-time comment, it is not close to the level of severity required to base a harassment claim upon words only.

### B. Disability Discrimination Claims

Plaintiff next claims that she suffered an adverse action due to her disability. These claims all fail because Plaintiff did not plead facts from which this Court could infer she is disabled or that if there was a disability, there was a failure to accommodate it.

Plaintiff's only allusions to a medical condition are found at Paragraph 34, where she alleges that she suffered "*a* panic attack, anxiety, paranoid, and nausea" as a result of having smoke blown in her face by a prisoner. (Dkt. #1 at ¶ 34 (emphasis added)). Put another way, plaintiff alleges exactly *one* medical episode, and then claims that this episode constituted a disability under the ADA. But a temporary medical condition cannot be a disability. *See Gardner*, 410 F. Supp. 3d at 736. There are no allegations whatsoever that the panic attacks persisted as a result of the smoke incident, or that this one panic attack led to ongoing symptoms, or that an ongoing reasonable accommodation was requested or needed. For that reason, Plaintiff's disability discrimination claim fails.

Further, the only purported "accommodation" request Plaintiff pleads was a one-time request to go to the hospital. (Dkt. #1 at ¶ 36). While this might have been necessary, it is not an accommodation for a disability. An accommodation is something that allows someone with a disability to perform their essential job functions. *See Skerski v. Time Warner Cable Co., a Div. of Time Warner Ent. Co., L.P.*, 257 F.3d 273, 285, n.4 (3d Cir. 2001) (noting that a reasonable accommodation "enable[s] the employee to perform" essential job functions). There are no factual allegations which suggest that the hospital trip would allow Plaintiff to perform her job functions that day or going forward. In fact, the allegations of the Complaints seem to say that Plaintiff continued to adequately perform her job responsibilities notwithstanding this alleged denial of a trip to the hospital. (Dkt. #1 at ¶ 24).

Finally, the Complaint pleads that Plaintiff *did*, in fact, go to the hospital and does not plead that Plaintiff received any discipline for going to the hospital. (*Id.* at ¶ 38). In that sense, the Complaint suggests that she received the only thing which might arguably be an accommodation that she ever requested. Plaintiff does not plead that she requested and was denied an accommodation such as a reassignment to duties less likely to encounter smoke, or time off for doctor's appointments, or anything of the sort. For that reason, there can be no failure to accommodate, even if there were some disability plausibly alleged (which there was not).

### C. Disability Retaliation Claims

The Court will next address Plaintiff's disability retaliation claims. As described above, the Complaint patently fails to make allegations which could support underlying violations of the ADA. But that does not end this Court's inquiry. Under the relevant statutes, a disability retaliation claim can survive even where the underlying claim is dismissed if the alleged

protected conduct was in response to what the Plaintiff reasonably believed was a violation of the relevant statute.

This Court shares Judge McHugh's view that where the facts (as alleged or proven, depending on the stage of the case) show that Plaintiff only requested an accommodation for a temporary condition, a plaintiff cannot show that they objectively reasonably believed they were engaging in protected conduct. *Isley*, 191 F. Supp. 3d at 470. There is no reasonable understanding of the word disability, either in plain English or under legal doctrine, which could include within it a single panic attack which never recurred and resulted in no last symptoms. For that reason, Plaintiff's disability-related retaliation claims must be dismissed.

### D. Sex Discrimination Retaliation Claims.

As to the sex discrimination retaliation claim, this Court once again finds the Complaint to be exceedingly weak in terms of specifically alleged facts. But unlike the other claims, there is *just* enough in the Complaint to compel the Court to deny dismissal. In the first instance, reporting Officer Clay to the Angelucci was almost certainly protected activity. Even though this Court finds Officer Clay's comments, as pleaded, not so severe as to rise to stating a claim (*see supra*), Plaintiff's mistaken belief that those comments were actionable was reasonable, and therefore her reporting it to Angelucci was protected conduct.

 With the protected conduct hurdle cleared, and with no dispute that Plaintiff was subjected to an adverse employment action, all that remains is finding whether sufficient facts are alleged which would permit an inference that there was a causal connection between the protected conduct and the adverse action. This Court finds there is.

Read in a light most favorable to Plaintiff, the Complaint alleges that she was subjected to unpleasant conduct from a co-worker, complained about it to management at some point in

May, and by early June was subjected to a suspension for which nobody had any explanation. The reason given after the fact (allegedly smuggling contraband) would easily prevail as a legitimate, non-discriminatory reason at summary judgment, if proven. But at this stage, this Court must make inferences in Plaintiff's favor. The inability to immediately tell Plaintiff the basis for the discipline, plus the earlier allegations of a similar retaliatory rumor spread by Officer Clay, plus allegedly light discipline against those for whom Plaintiff was accused of smuggling contraband just barely creates an inference strong enough to survive Rule 12(b)(6). It is quite a close call, but at this stage, a call this close should be resolved in a Plaintiff's favor.

V. **Conclusion**

For the reasons stated above, the motion to dismiss is granted in part and denied in part. Counts I through VI are dismissed without prejudice. Count VIII is dismissed without prejudice. Counts IX and X are dismissed without prejudice to the extent they find their basis in Plaintiff's alleged disability.  Count VII will be permitted to go forward. To the extent that Counts IX and X find their basis in sex discrimination, these causes of action may proceed.

The counts dismissed without prejudice above did not present close calls based on the facts, as plead. The Complaint, as alleged, is obviously and facially deficient. Plaintiff is being provided the opportunity re-plead and add additional facts, if such facts exist. If Plaintiff can do so successfully, these counts can move forward.

DATED: April 17, 2025         BY THE COURT:

                              _____
                              GAIL WEILHEIMER        J.